UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAULA CACCIAVILLANO, | ) | CIVIL ACTION NO. 4:21-CV-296 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI,[1] | ) | |
| Defendant | ) | |

<u>MEMORANDUM OPINION</u>

I.    INTRODUCTION

Plaintiff Paula Cacciavillano, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party."); s*ee also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find remand under Sentence Six is not appropriate. Plaintiff has no further objections to the Commissioner's final decision. Accordingly, the Commissioner's final decision will be AFFIRMED.

## II.    BACKGROUND & PROCEDURAL HISTORY

On November 20, 2018, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 38).  In this application, Plaintiff alleged she became disabled as of November 6, 2018, due to the following conditions: heart palpitations; hypertension; dyspnea; diastolic dysfunction; atrial septal aneurysm; vitamin D deficiency; migraines; and seronegative polyarthritis. (Admin. Tr. 268). Plaintiff alleges that the combination of these conditions affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, and use her hands. (Admin. Tr. 283). Before the onset of her impairments, Plaintiff worked as a billing clerk. (Admin. Tr. 47).

On March 8, 2019, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 38). On May 10, 2019, Plaintiff requested an administrative hearing. *Id.*

On May 5, 2020, Plaintiff, assisted by her counsel, appeared by telephone and testified during a hearing before Administrative Law Judge Michelle Wolfe (the

"ALJ"). *Id*. On May 18, 2020, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 48). On July 7, 2020, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 216). Along with her request, Plaintiff submitted new evidence that was not available to the ALJ when the ALJ's decision was issued. (Admin. Tr. 8-9, 15-34).

On January 4, 2021, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1).

On February 17, 2021, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. *Id*. As relief, Plaintiff requests that the Court award benefits, or in the alternative, remand this matter for a new administrative hearing. *Id*.

On June 28, 2021, the Commissioner filed an Answer. (Doc. 16). In the Answer, the Commissioner maintains that the decision holding Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. *Id*. Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 17).

Plaintiff's Brief (Doc. 20) and the Commissioner's Brief (Doc. 21) have been filed.  Plaintiff did not file a reply. This matter is now ready to decide.

III.   STANDARDS OF REVIEW

A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[2] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4).

---

[2] Throughout this opinion, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on May 18, 2020.

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064.  Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the

basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

IV.    DISCUSSION

In her brief, Plaintiff raises one argument—that remand is required pursuant to sentence six of 42 U.S.C. § 405(g) for the consideration of new medical evidence.[3]

A.    THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In her May 2020 decision, the ALJ found that Plaintiff would meet the insured status requirement of Title II of the Social Security Act through December 31, 2021. (Admin. Tr. 40). Then, Plaintiff's application was evaluated at steps one through four of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between November 6, 2018 (Plaintiff's alleged onset date) and May 18, 2020 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 40). At step two, the ALJ found that, during the relevant period, Plaintiff

---

[3] Plaintiff's brief does not include a statement of errors. *See* LR 83.40.4(b).

had the following medically determinable severe impairments: psoriatic arthritis and scoliosis. (Admin. Tr. 41). The ALJ also identified the following medically determinable non-severe impairments: hypertension; vitamin D deficiency; heart palpitations; diastolic dysfunction and atrial septal aneurysm; and migraines. *Id.* The ALJ found that the following impairments were not medically determinable: back pain. *Id.* At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 41-43).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) except that Plaintiff is further limited to:

> standing and walking four hours throughout the workday but could still lift and carry 20 pounds occasionally and 10 pounds frequently and no limitations on sitting with occasional balance, stoop, kneel, climb but never on ladders ropes or scaffolds, never crawl or crouch, limited to frequent exposure to temperature extremes of cold and heat, wetness, humidity, vibrations, fumes, odors, dusts, gases, and poor ventilation, and hazards including moving machinery and unprotected heights.

(Admin. Tr. 43).

At step four, the ALJ found that, during the relevant period, Plaintiff could engage in her past relevant work as a billing clerk as it is generally performed in the national economy. (Admin. Tr. 47).

B.    SUMMARY OF EVIDENCE INTRODUCED TO THE APPEALS COUNCIL

At the time the ALJ issued his decision, two statements by medical providers were present in the medical evidence of record: (1) a medical source statement by consultative examiner Justine Magurno, M.D. ("Dr. Magurno"); and (2) an RFC assessment by state agency medical consultant Toni Jo Parmelee, D.O. ("Dr. Parmelee") (Admin. Tr. 123-126). The record before the ALJ did not include any opinion issued by Plaintiff's treating source, Timothy Baxter M.D. ("Dr. Baxter").

After the ALJ issued a decision in Plaintiff's case, Plaintiff requested review by the Appeals Council. Plaintiff also submitted several new pieces of evidence, including three medical source statements by Plaintiff's treating source, and a letter from Plaintiff's treating source.

On June 12, 2020, Dr. Baxter completed a check-box medical source statement about Plaintiff's ability to engage in physical work-related activities. In that medical source statement, Dr. Baxter assessed that Plaintiff could: never frequently lift or carry any object; occasionally lift and/or carry up to ten pounds; sit for up to one hour at a time and three hours per eight-hour workday; stand for up to forty minutes at one time and for a total of one hour per eight-hour workday; walk up to fifteen minutes at one time and for a total of one hour per workday; occasionally use her hands and arms for reaching, handling, fingering, feeling, pushing, and pulling; and never climb ramps, climb stairs, climb ladders, climb

scaffolds, balance, stoop, kneel, crouch, or crawl. (Admin. Tr. 15-20). Dr. Baxter also assessed that Plaintiff could not tolerate exposure to unprotected heights, moving mechanical parts, extreme cold, extreme heat, and vibrations, and could only occasionally operate a motor vehicle and tolerate humidity and wetness or exposure to pulmonary irritants. *Id.*

Also on June 12, 2020, Dr. Baxter completed a check box/fill-in-the-blank "headaches medical source statement." (Admin. Tr. 23-27). In that medical source statement, Dr. Baxter reported that Plaintiff has severe migraines that prevent all activity four or five times each month. He also assessed that the migraines typically last between four and eight hours. Dr. Baxter assessed that Plaintiff's migraines would cause her to be off task approximately twenty percent of the time and would be absent more than four days per month as a result of her impairments.

Also on June 12, 2020, Dr. Baxter completed a check-box/fill-in-the-blank "arthritis medical source statement." (Admin. Tr. 29-33). In that medical source statement, Dr. Baxter reported that Plaintiff has arthritis in her ankles, knees, hips, feet, and hands. Dr. Baxter assessed that Plaintiff could: not lift or carry on an occasional or frequent basis, and could rarely lift or carry anything that weighs less than ten pounds; sit for up to one hour at a time; stand for fifteen minutes at a time; walk zero city blocks without pain; use her hands and arms for less than ten percent of the workday (handling 10%, fingering 5%, overhead reaching 0%, and other

reaching 2%); and would be absent from work more than four days per month. Dr. Baxter also assessed that Plaintiff would need unscheduled twenty-minute work breaks every hour to lie down, and must be permitted to shift between sitting, standing and walking at will.

On August 31, 2020, Dr. Baxter wrote the following letter on Plaintiff's behalf:

> I am writing this letter in support of my above named patient, Paula Cacciavillano, regarding her disability claim. Paula has been my patient for almost 18 years. She not only worked without problems for years, but *enjoyed* doing so. She has had several unfortunate diagnoses in the past 18 years, and these illnesses have taken their toll on her body. It was extremely difficult for her when the time came for applying for disability; Paula and I talked about it at length. I am writing this letter because Paula told me she had her application for disability declined. I have reviewed the Judge's decision, and disagree with some of the medical statements in this document:
>
> 1. On page 4, Item 3, the decision states, "the record does not establish that these impairments are uncontrolled despite medication." However, in the patient chart, there are Rheumatology notes dated 11/25/2019 and 1/20/2020 (in person visits) and telephonic visits (4/16/2020 and 6/9/2020) where the pain is characterized as "severe," despite being on Cymbalta and Enbrel and later, a combination of Cymbalta, methotrexate, and Enbrel. This would indicate that the medications are *not* controlling her impairments, and I would, therefore, disagree with the judge's statement listed earlier in this paragraph.
>
> 2. On page 4, Item 4, it states "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." In the same Rheumatology notes referenced in

#1 above, the joints referenced include every joint of the lower extremities (foot, ankle, knee and hip). Criterion A(1) is met, as persistent inflammation is likely causing the pain, despite the lack of deformity, and interferes with her ability to walk properly. Criterion A(2) is also met due to shoulder involvement, and a subsequent inability to provide gross motor movements (e.g., pick up and carry objects more than 10 pounds).

3. I disagree with Item 5 on page 6 of the decision, which states, "the claimant has the residual functional capacity to perform light work . . . but could still lift and carry 20 pounds occasionally and 10 pounds frequently and no limitations of sitting with occasional balance, stoop, kneel, climb . . ." It is my professional opinion that she should not carry more than 10 pounds at all, and that she should not stoop, kneel or climb at all. I saw Paula in my office on 6/8/2020 for a left knee injury that happened because she stood up from a deep sitting position and likely injured her meniscus. It improved without further work up or treatment, but having her stoop or kneel and then getting up on her own puts her at high risk for subsequent injuries.

4. The first full paragraph on page 9 of the decision states, ". . . the claimant has not exhibited more than mild to moderate symptoms and has received minimal treatment. . ." I disagree that she has had minimal treatment. She is presently on methotrexate, Cymbalta and Enbrel, and in the past has also had prednisone, Otezla, and sulfasalazine. There are powerful medications in Paula's regimen, particularly when given in combination. This is much more than minimal treatment for arthritis.

I hope that this is helpful for Paula's case. It remains my professional opinion that Paula is totally disabled, and despite wanting to work (which she always has and still would if she could), she is simply not physically capable anymore.

(Admin. Tr. 8-9).

C.    WHETHER THIS CASE SHOULD BE REMANDED PURSUANT TO SENTENCE SIX OF 42 U.S.C. § 405(G) FOR THE CONSIDERATION OF NEW EVIDENCE

Plaintiff requests that the Court remand this case to the Commissioner pursuant to 42 U.S.C. § 405(g) Sentence Six. Under Sentence Six of 42 U.S.C. § 405(g), a court may remand an agency determination for consideration of new evidence if a plaintiff shows " 'that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.' " 42 U.S.C. § 405(g)).  In the Third Circuit, a court may only remand if the plaintiff shows:

(1)    That the evidence is "new and not merely cumulative of what is already in the record," *Scatorchia v. Comm'r of Soc. Sec.*, 137 F. App'x 468, 472 (3d Cir. 2005) (citing *Newhouse v. Heckler,* 753 F.2d 283, 287 (3d Cir.1985));

(2)    That the evidence is "material, relevant and probative," *Id.*

(3)     There exists a "reasonable probability that the new evidence would have caused the Commissioner to reach a different conclusion," *Id.*; and

(4)    "[G]ood cause as to why the evidence was not incorporated into the earlier administrative record." *Id.*

In her brief, Plaintiff argues that remand is warranted for a new administrative hearing based on two groups of evidence that were not submitted to the ALJ: (1) an August 31, 2020 letter from treating source Timothy Baxter, M.D. ("Dr. Baxter"), (Admin. Tr. 8-9); and (2) and a series of medical source statement questionnaires (physical ability to do work-related activities, headaches medical source statement,

Page 14 of 26

and arthritis medical source statement) completed on June 12, 2020 (Admin. Tr. 15-

33). Specifically, Plaintiff contends that:

> After the ALJ's decision, Plaintiff submitted both: (1) the medical
> opinion of her longtime treating physician, Dr. Baxter; and (2) a letter
> from Dr. Baxter addressing the numerous medical errors in the ALJ's
> decision. "[W]hen the claimant seeks to rely on evidence that was not
> before the ALJ, the district court may remand to the Commissioner but
> only if the evidence is new and material and if there was good cause
> why it was not previously presented to the ALJ. *Matthews v. Apfel*, 239
> F.3d 589, 593 (3d Cir. 2001).

> This evidence is new because it did not exist as of the date of the ALJ's
> decision. Dr. Baxter completed a form on June 12, 20202 [sic],
> approximately one month after the ALJ's May 15, 2020 decision. Tr.
> 20. The letter is likewise new because it did not exist before the ALJ's
> decision and also was created after, and in response to, the ALJ's
> decision. Tr. 8.

> This evidence is material because it is from Plaintiff's long-time
> treating physician and specifically addresses Plaintiff's work-related
> functioning during the relevant period.

> There is good cause for not presenting this evidence earlier to the ALJ.
> The letter was submitted in response to the false conclusions in the
> ALJ's decision and, thus, there was no reason for it to be submitted
> earlier. For example, the ALJ made claimed [sic] that "the record does
> not establish that these impairments are uncontrolled despite
> medication." Tr. 8. The treating physician read this and completely
> disagreed and, thus, wrote a letter stating that the records show that
> Plaintiff's pain is continuously noted to be "severe" despite being on
> significant medications. Tr. 8. Thus, it is "uncontrolled." The treating
> physician also disagreed with the ALJ's statement that Plaintiff "has
> received minimal treatment," when the evidence shows "she is
> presently on methotrexate, Cymbalta, and Embrel...There are powerful
> medications in Paula's regimen, particularly when given in
> combination. This is much more than minimal treatment of her psoriatic
> arthritis." Tr. 9.

This evidence reasonably could change the outcome because it is the opinion of Plaintiff's long-time treating physician. Dr. Baxter's opinion is very well explained and he also cites to supporting clinical evidence which amply satisfies the "supportability" factor. 20 C.F.R. § 404.1520c. Moreover his opinions are consistent with the evidence of psoriatic arthritis and persistent body-wide pain and muscle spasms. His opinions are in many ways consistent with those of Dr. Magurno. He assesses limitations to sitting and standing, using the hands, reaching, staying on task, and maintaining attendance that are inconsistent with the RFC and show that Plaintiff cannot perform past relevant work or any other work in the economy.

(Doc. 20, pp. 7-8).

In response, the Commissioner argues that remand is not required under sentence six of 42 U.S.C. § 405(g) because the evidence introduced at the appeals council level is not "new" or "material." I will address each of these contentions below.

> 1. Whether Dr. Baxter's Medical Source Statements & Letter are "New" Because it Did Not Exist When the ALJ's Decision Was Issued

The Commissioner argues that Dr. Baxter's Medical Source Statements and Letter are not "new." Specifically, The Commissioner contends:

Foremost, Dr. Baxter's June 2020 statements and August 2020 letter are not "new." Evidence is "new" only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990) (emphasis added). A statement from a physician who previously treated the claimant is not new because the claimant could have requested the statement earlier. *See, e.g., Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (holding that evidence not technically in existence at the time of the administrative proceedings will not be considered "new" when it was

effectively available to the claimant at that time); *Black v. Colvin*, No. 14-419, 2015 WL 1275926, \*6 (W.D. Pa. Mar. 19, 2015) (recognizing that although a medical opinion "may not have existed at the time" of the ALJ's decision, it was not "new" because "it was available to her at that time"); *Fraser v. Astrue*, No. 06-4886, 2009 WL 948341, at \*2 (E.D. Pa. Apr. 7, 2009) ("The letter from Dr. McClain, meanwhile, is not new evidence that was 'not in existence or available to the claimant at the time of the administrative proceeding' because Dr. McClain, as plaintiff's treating doctor, could have provided a letter of this nature to plaintiff prior to the hearing in front of the ALJ"); *see also Tolbert v. Astrue*, No. 7:09-CV-68-D, 2010 WL 5582943, at \*11 (E.D.N.C. Dec. 23, 2010), *adopted by* 2011 WL 121907 (E.D.N.C. Jan. 13, 2011) (finding that a treating physician opinion is not "new" when a claimant could have obtained it by asking for it earlier).

Plaintiff certainly presents no evidence to suggest that she could not have requested a medical opinion or letter from Dr. Baxter prior to her May 2020 hearing (Pl.'s Br. at 5-6), particularly given that she treated with him since at [sic] approximately 2005 (Tr. 23, 29; see also Tr. 358). Indeed, Plaintiff's counsel admits that this evidence was obtained for the intended purpose of rebutting and responding to the ALJ's decision (Pl.'s Br. at 5-6; *see also* Tr. 358). Although a claimant may submit "rebuttal evidence" if an ALJ "introduces new evidence at or after a hearing," it is not contemplated that an ALJ's decision itself constitutes "new evidence at or after a hearing" that a claimant may then "rebut" with further "evidence." *See* 81 Fed. Reg. 90987-01, at \*90991. The solicitation of a contrary medical opinion after an adverse ALJ decision is not the type of "evidence" contemplated as "new" pursuant to sentence six.

Indeed, Plaintiff's argument that this evidence is "new" because "it did not exist" at the time of the ALJ's decision turns efficiency and finality considerations on their head (Pl.'s Br. at 5). Governing regulations have long called for claimants to timely inform or provide evidence to the ALJ. *See e.g.*, 20 C.F.R. §§ 404.933(a) (stating that the request for a hearing "should include . . . [a] statement of additional evidence to be submitted and the date you will submit it"); 404.1512(c) (outlining a claimant's responsibility to submit evidence). A "representative must . . . [a]ct with reasonable promptness to help obtain the information or

Page 17 of 26

evidence that the claimant must submit under our regulations, and forward the information or evidence to us for consideration as soon as practicable." 20 C.F.R. § 404.1740(b)(1).

Here, Plaintiff, who was represented by counsel, did not tell the ALJ that she planned to submit or had difficulty obtaining additional evidence. Rather, when the ALJ asked counsel if he had reviewed the exhibits and had any objection, counsel simply confirmed that he had reviewed the evidence, and his only objection was to the weight of the evidence, not to its submission (Tr. 59). Counsel did not state that any evidence was lacking or that additional time was needed to supplement the record (Tr. 59). And the ALJ recognized this fact, noting that Plaintiff submitted or informed her about all written evidence at least five days in advance of the hearing (Tr. 38).

Plaintiff should not be permitted [to] "vault the newness hurdle" by simply submitting evidence that purports to contradict the ALJ's findings after the fact. *See Fagg v. Chater*, 106 F.3d 390, at *2 (4th Cir. 1997) (table) (citing *Evangelista v. Sec'y of Health and Human Servs.*, 826 F.3d 136, 140 (1st Cir. 1987) ("if a losing party could vault the 'newness' hurdle . . . merely by retaining an expert to reappraise the evidence and come up with a conclusion different from that reached by the hearing office, then the criterion would be robbed of all meaning."). Plaintiff provided no meaningful argument as to why she could not have procured this evidence earlier and provided it to the ALJ. Therefore, the evidence is not "new."

(Doc. 21, pp. 16-20) (internal footnote omitted).


In her brief, Plaintiff argues that Dr. Baxter's medical source statements and letter are "new" because they did not exist at the time of the administrative hearing. Plaintiff cites to no caselaw in support of her position.

The Commissioner responds that the evidence is not "new" because it is derivative of evidence that was already in the record. In support of her argument, the

Commissioner relies on two circuit court cases *Perkins v. Chater*, 107 F.3d 1290 (7th Cir. 1997) and *Evangelista v. Secy's of Health & Hum. Servs.*, 826 F.2d 136 (1st Cir. 1987), as well as other district court cases. Both of the circuit court cases have been cited favorably by district courts in this circuit. *See e.g.*, *Lyons v. Berryhill*, No. 18-1106, 2019 WL 4094701 (W.D. Pa. Aug. 29, 2019); *Cunningham v. Colvin*, 1:13-CV-1659, 2014 WL 4626506 at *10 (M.D. Pa. Sept. 15, 2014).

In *Perkins*, the ALJ denied the claimant's application for benefits on November 16, 1992. *Perkins*, 107 F.3d at 1292. As summarized in the Circuit's opinion:

> On December 28, 1992, Perkins asked the Appeals Council to review the November 16 decision. The Council gave him an opportunity to submit additional evidence or argument, and on April 14, 1993, he did so. His "new evidence" consisted of a review of the record and a Mental Residual Functional Capacities Assessment that psychologist Dr. William Reich had performed on March 19 at the request of Perkins' attorney. Apparently without this new material in its possession, the Council denied review in an order dated April 27, 1993. Over a year later, it rectified its failure to consider Perkins' additional filing, but it reaffirmed its decision not to grant the request for review. In a letter dated May 25, 1994, the Council informed Perkins that it had reviewed the entire record, including the new material, and had concluded that there was no basis to grant the request under either 20 C.F.R. § 404.970 (relating to review of DIB claims where "new and material evidence" is presented) or 20 C.F.R. § 416.1470 (same review of SSI claims). Discussing the new evidence specifically, the Appeals Council "decided that neither the contentions nor the additional evidence provides a basis for changing the decision."

*Id.* Like Plaintiff, the claimant in *Perkins* sought remand under sentence six for the consideration of new evidence. In *Perkins*, the Circuit declined to remand under sentence six based on a "derivative evidence" analysis:

> Even though Dr. Reich's evaluations were technically not in existence at the time of the earlier hearing, he based his conclusions entirely on evidence that had long been available. Under *Sample* [*v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993)]*,* this derivative evidence was thus also "available" at the time of the earlier proceeding and does not qualify under sentence six as "new." Furthermore, even if we were to take the generous view of both "new" and "material" that the Appeals Council adopted, Perkins has not shown good cause for his failure to seek out and include Dr. Reich's evaluations into the earlier record. The mere fact that Dr. Reich devoted a part of his report to a critique of the ALJ's opinion, which obviously could not have been done before the opinion issued, does not amount to good cause; such a rule would amount to automatic permission to supplement records with new evidence after the ALJ issues a decision in the case, which would seriously undermine the regularity of the administrative process. The district court correctly denied Perkins' request for a sentence six remand.

*Id.* at 1246.

In *Evangelista*, the ALJ issued a decision denying the claimant's application in early 1984. *Evangelista*, 826 F.2d at 138. In June 1985, a physician wrote an affidavit that the claimant had been totally disabled since 1978. *Id.* at 139. Applying a similar "derivative evidence" analysis, the Circuit concluded that remand under sentence six was not required. In doing so, it explained:

> The attempt to fit the Hoerner evidence within these guidelines is an ill-conceived effort to shove a square peg into a round hole. The medical record compiled before the ALJ was voluminous, detailed, and complex. It spanned many years, and dealt with an array of ailments.

Given the prolixity of the evidence actually considered, it can scarcely be suggested that the taking of additional evidence is necessary for a fuller development of the facts of the case, or that the presentation of yet another medical report is somehow essential to afford the claimant a fair hearing. *Compare Scott v. Califano,* 462 F.Supp. at 242–43. Although Dr. Hoerner arranges the factual particles contained in the record in a somewhat different pattern, his affidavit and report offers no new *facts* of any relevance. In short, the evidence is derivative rather than direct. It results from a retained physician's evaluation of the identical medical reports which composed the administrative docket. That Dr. Hoerner happened to view this collection of data differently, that he happened to disagree with the conclusion reached by the ALJ, does not render the *evidence* which forms the basis for his opinion any less cumulative of what already appears in—indeed, comprises the totality of—the record. If a losing party could vault the "newness" hurdle of § 405(g) merely by retaining an expert to reappraise the evidence and come up with a conclusion different from that reached by the hearing officer, then the criterion would be robbed of all meaning. A wide variety of evidence would be "new" in a sophisticated, enterprising world where there are often almost as many opinions as there are experts.

*Id.* at 140.

Although Plaintiff is correct that the three medical source statements and the letter were not in existence at the time the ALJ decision was issued, she has not explained how the medical source statements and letter are not derivative of the evidence already submitted to the ALJ. Similarly, other courts have held that letters authored by treating physicians which include commentary on an ALJ's decision or medical opinions or evidence which could have been provided before the ALJ hearing are not new evidence. *See Fraser v. Astrue*, 2009 WL 948341, at *2 (E.D. Pa. Apr. 8, 2009), *aff'd*, 373 F. App'x 222 (3d Cir. 2010) (citing *Sullivan,* 496 U.S.

at 623); *Granger v. Astrue*, 2012 WL 1392567, at *10 (E.D. Pa. Mar. 20, 2012),

*report and recommendation adopted*, 2012 WL 1392563 (E.D. Pa. Apr. 20, 2012);

*Black v. Colvin*, 2015 WL 1275926, at *6 (W.D. Pa. Mar. 19, 2015) (citing *Sullivan,*

496 U.S. at 626); *Aromando v. Berryhill*, 2019 U.S. Dist. LEXIS 36850, *43-44;

*Guyer v. Saul*, 2020 WL 497286, at *7–8 (M.D. Pa. Jan. 15, 2020), *report and*

*recommendation adopted*, 2020 WL 504658 (M.D. Pa. Jan. 30, 2020). Based on this

authority, I find that the medical source statements and letter are not "new" because

they are derivative of evidence that was already submitted in this case.

Dr. Baxter reported that he has treated Plaintiff for fifteen years. (Admin. Tr.

23). Dr. Baxter's treatment records are a part of the administrative record in this case

and were available to the ALJ when the decision was issued. (Admin. Tr. 364-470,

501-599) (medical records from Arnot Health, where Dr. Baxter treated Plaintiff).

Although the medical opinions and letter were written after the ALJ's decision was

issued, because they appear to be based on evidence that was already in the record

they cannot be fairly characterized as "new."

      2.     Whether Dr. Baxter's Medical Source Statements & Letter are
           "Material"

In *Szubak,* the Third Circuit addressed the "materiality" requirement for

"new" evidence as follows:

> Second, the evidence must be "material;" it must be relevant and
> probative. *E.g., Chaney v. Schweiker,* 659 F.2d 676, 679 (5th Cir.

1981). Beyond that, the materiality standard requires that there be a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination. *Id.; see also Bomes,* 544 F.Supp. at 76. An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition. *See Ward v. Schweiker,* 686 F.2d 762, 765 (9th Cir. 1982).

745 F.2d at 833.

The Commissioner's argument that Plaintiff has failed to show that the medical source statements and letter are "material" is two-fold. First, the Commissioner argues that Dr. Baxter's Medical Source Statements are not "material" because they are not relevant to the probative period. Second, she contends that the Letter is not material because there is no reasonable possibility that the Letter would have changed the outcome.

With respect to her first argument, the Commissioner contends:

Contrary to her argument (Pl.'s Br. at 5-6), Plaintiff failed to show that the evidence she submitted is material as defined above. Notably, one of Dr. Baxter's June 12, 2020 statements is explicit that "[t]he limitations above are assumed to be your opinion regarding current limitations only" (Tr. 20) (emphasis added). When Dr. Baxter was asked if he had sufficient information to opine about Plaintiff's past limitations, he left that portion of the form blank (Tr. 20). He did not indicate that Plaintiff's limitations related back to the relevant period (Tr. 20). Thus, Plaintiff failed to show that this statement related to the period prior to the ALJ's May 18, 2020 decision. Similarly, Dr. Baxter's other two June 2020 statements provide no indication that the limitations contained therein relate to the period prior to the date of the ALJ's May 18, 2020 decision (Tr. 23-27, 29-33). Thus, beyond her

failure to prove newness, Plaintiff also failed to prove materiality, as she has not shown that the evidence relates to the period at issue.

(Doc. 21, pp. 21-22). The Commissioner is correct that the first medical source statement (on the ability to do work-related physical activity) states that:

> X.   THE LIMITATIONS ABOVE ARE ASSUMED TO BE YOUR OPINION REGARDING CURRENT LIMITATIONS
>
> HOWEVER, IF YOU HAVE SUFFICIENT INFORMATION TO FORM AN OPINION WITHIN A REASONABLE DEGREE OF MEDICAL PROBABILITY AS TO PAST LIMITATIONS, ON WHAT DATE WERE THE LIMITATIONS YOU FOUND FIRST PRESENT? _____

(Admin. Tr. 20) (capitalization in original). Because Dr. Baxter left the line blank, it is fairly interpreted that this medical source statement addresses Plaintiff's limitation on or after June 12, 2020. The Commissioner is also correct that the other two medical source statements do not specify whether they relate to the relevant period in this case (from November 6, 2019 through May 18, 2020). Thus, Plaintiff has not shown that these medical source statements "relate" to the relevant period.

With respect to her second argument, the Commissioner contends:

> The August 31, 2020 letter from Dr. Baxter is likewise not material (Tr. 8-9). This letter consists mainly of assertions that the ALJ erred when making administrative findings in issuing her decision that Plaintiff was not disabled (Tr. 8-9). For example, the letter appears to state that Plaintiff meets a Listing, and opines that Plaintiff is "totally disabled" and that the ALJ should have reached a different RFC finding (Tr. 8-9). These are not "medical opinions" as defined by the controlling regulations. *See* 20 C.F.R. § 404.1513(a)(2). Rather, they are statements on issues reserved to the Commissioner. *See* 20 C.F.R. §

404.1520b(c)(3)(i). Statements from medical sources "on issues reserved to the Commissioner" (like statements that a claimant is "disabled" or "meets or medically equals a Listing") are "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(3)(i). Therefore, these statements cannot be material.

Beyond this, although Dr. Baxter also commented on the nature of Plaintiff's impairments and her response to treatment (i.e., "other medical evidence," 20 C.F.R. § 404.1513(a)(3)) and proposed that Plaintiff should not carry more than 10 pounds, stoop, kneel or climb (which arguably would be a "medical opinion," 20 C.F.R. § 404.1513(a)(2)(i)) (Tr. 8-9), these statements do not present a reasonable probability of changing the ALJ's decision because they are unsupported by any record evidence and do not relate to Plaintiff's condition during the period prior to the ALJ's decision.

First, the record does not contain the 2020 treatment notes on which Dr. Baxter relies, and the November 2019 note that is in the record and cited by Dr. Baxter only contradicts his assertions about Plaintiff's pain and response to treatment (Tr. 8-9). This rheumatology treatment note does not state that Plaintiff had "severe" pain (Tr. 8-9); rather, it states that her pain was 2/10 and that Cymbalta was "helping" (Tr. 591). Dr. Baxter's statements about her pain and response to medication are therefore unsupported and would have no reasonable probability of the [sic] changing the ALJ's decision.

Second, Dr. Baxter's statement as to Plaintiff's functional limitations (namely, her ability to carry and perform postural activities) cites exclusively to a "left knee injury" discovered at a June 8, 2020 appointment, and thus relates to a subsequent deterioration or later-acquired disability. *See Szubak*, 745 F.2d at 833; *Lisnichy*, 599 F. App'x at 429. Plaintiff cannot show that this statement was material, as it did not relate to the period at issue prior to the May 18, 2020 ALJ decision. Therefore, it is not material, and there is no reasonable probability that this evidence would have changed the ALJ's decision.

(Doc. 21, pp. 21-24).

I need not address the Commissioner's contention that the Letter would not affect the outcome in this case, as its lack of "newness" compels me to conclude that remand is not required under sentence six of 42 U.S.C. § 405(g).

V.    CONCLUSION

Accordingly, I find that Plaintiff's request for remand under Sentence Six of 42 U.S.C. § 405(g) will be DENIED as follows:

(1)    The final decision of the Commissioner will be AFFIRMED.

(2)    Final judgment will be issued in favor of KILOLO KIJAKAZI.

(3)    An appropriate order will be issued.

Date: July 5, 2022                          BY THE COURT

                                            *s/William I. Arbuckle*
                                            William I. Arbuckle
                                            U.S. Magistrate Judge